IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTIN LUTHER ROGERS, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 13-3771 (JBS-AMD) |
| D. MCKISHEN, et al., | |
| Defendants. | **OPINION** |

**APPEARANCES:**

MARTIN LUTHER ROGERS, Plaintiff pro se
405519/SBI473602B
Northern State Prison
168 Frontage Road
Newark, New Jersey 07114-2300

GURBIR GREWAL, Attorney General for the State of New Jersey
KEVIN JOHN DRONSON, Deputy Attorney General
Office of the Attorney General
25 Market Street
Trenton, New Jersey 08625
    Attorneys for Defendants K. Davis, Donaghy, Goffredi, D.
    McKishen, Miller, H. Ortiz, Park, R. Pettit, Robbins, S.B.
    Mutschler, Seguinot, Thompson, and Wolbert

**SIMANDLE, District Judge:**

**I.    INTRODUCTION**

        This matter comes before the Court on Defendants' K. Davis,

Donaghy, Goffredi, D. McKishen, Miller, H. Ortiz, Park, R.

Pettit, Robbins, S.B. Mutschler, Seguinot, Thompson, and Wolbert

motion for summary judgment. Docket Entry 124. Plaintiff Martin

Luther Rogers opposes the motion. Docket Entry 129. The motion

is being considered on the papers pursuant to Fed. R. Civ. P. 78(b).

Plaintiff, a state prisoner, asserts that various prison employees opened his legal mail outside his presence, in violation of his constitutional rights under the First Amendment. The principal issues to be decided are (1) whether defendants are entitled to summary judgment on plaintiff's claims that defendants opened or otherwise tampered with his properly marked legal mail outside of his presence between May 12, 2012 and January 26, 2013 and, in the case of McKishen, failed to correct an ongoing constitutional violation by his subordinates; (2) whether defendants are entitled to summary judgment on Plaintiff's claims that they interfered with his First Amendment right of access to the courts through their actions, and (3) to the extent there may have been a violation, are the remaining defendants entitled to qualified immunity.

For the reasons discussed herein, the Court finds that no reasonable jury could conclude defendants interfered with Plaintiff's access to the courts because there is no evidence defendants' alleged actions caused an injury to an existing criminal or civil cause of action. The Court also finds that a reasonable jury could conclude that a pattern or practice of opening Plaintiff's legal mail outside of his presence existed. Moreover, there is a question of fact as to whether Seguinot,

Goffredi, Davis, Thompson, Robbins, and Donaghy participated in the opening of Plaintiff's legal mail outside his presence. The Court finds these remaining defendants are not entitled to qualified immunity as Plaintiff's right to have his legal mail opened by prison employees only in his presence was clearly established by 2012. Therefore, the Court will grant the summary judgment motion in part and deny it in part for the reasons stated below.

## II.  BACKGROUND

### A. Procedural History

On June 19, 2013, Plaintiff submitted a civil complaint alleging Defendant McKishen and John Doe mailroom officers violated his constitutional rights by opening, inspecting, reading, and tampering with his legal mail outside of his presence during his incarceration at South Woods State Prison ("SWSP") in Bridgeton, New Jersey. Complaint, Docket Entry 1. The Court permitted the complaint to proceed on May 1, 2014. Docket Entry 2.

Plaintiff moved to amend his complaint on September 8, 2014, as he had identified some of the employees who had allegedly worked in the mailroom during the period of his incarceration at SWSP. Docket Entry 8. Magistrate Judge Donio granted the motion and ordered the amended complaint to be served on the defendants. Docket Entry 9. Plaintiff moved to

amend his complaint again on January 22, 2016 to add new

defendants and dismiss others from the matter. Docket Entry 47.

The Court granted the motion on April 22, 2016. Docket Entry 49.[1]

**B. Statement of Facts**

*1. Allegations in Pleadings*

Plaintiff's second amended complaint alleges that

defendants opened and tampered with his legal mail while he was

incarcerated in SWSP. Officers Reyes, Ortiz, Davis, Pettit,

Thompson, Seguinot, Robbins, Goffredi, Wolbert, Donaghy, Rivera,

Parks, Mutschler, and Miller were all assigned to the SWSP

mailroom or delivered inmate mail to the housing units. Second

Amended Complaint ("SAC") ¶¶ 4-5, Docket Entry 52. McKishen was

the mailroom sergeant prior to his retirement. *Id.* ¶ 3.

Plaintiff states that he handed Rivera mail on May 12, 2012

that was addressed to a legal correspondent and was clearly

marked as legal mail. *Id.* ¶ 6. This letter was returned to

Plaintiff on June 23, 2012 with a "Return to Sender" sticker.

*Id.* ¶ 7. The letter had been "opened, inspected, and tampered

with outside of Plaintiff's presence" by Ortiz, Davis, Pettit,

---

[1] Officer Reyes was never served with the second amended complaint even after Plaintiff was given an extension of time to effectuate service. *See* Copy of Unexecuted Summons, Docket Entry 109. Officer Rivera also was not served. *See* Copy of Unexecuted Summons, Docket Entry 81.

Reyes, Thompson, Seguinot, Robbins, Goffredi, Wolbert, Donaghy, Rivera, Parks, Mutschler, Miller, and/or John Doe. *Id.*

Plaintiff also alleges Parks, Mutschler, Miller, and/or John Doe delivered clearly-marked legal mail to him on June 26, 2012 that had been "opened, inspected, and tampered with outside of Plaintiff's presence" by Ortiz, Davis, Pettit, Reyes, Thompson, Seguinot, Robbins, Goffredi, Wolbert, Donaghy, Rivera, Parks, Mutschler, Miller, and/or John Doe. *Id.* ¶ 8.

According to the SAC, Plaintiff handed a legal letter to Pettit on August 3, 2012 that was returned to him on August 29, 2012 after being "opened, inspected, and tampered with outside of Plaintiff's presence" by Ortiz, Davis, Pettit, Reyes, Thompson, Seguinot, Robbins, Goffredi, Wolbert, Donaghy, Rivera, Parks, Mutschler, Miller, and/or John Doe. *Id.* ¶¶ 9-10. The letter had a post office "Return to Sender" sticker. *Id.* ¶ 10.

On September 5 and 26, 2012 and January 26, 2013, Pettit and/or John Doe allegedly gave Plaintiff clearly-marked legal mail that had been "opened, inspected, and tampered with outside of Plaintiff's presence" by Ortiz, Davis, Pettit, Reyes, Thompson, Seguinot, Robbins, Goffredi, Wolbert, Donaghy, Rivera, Parks, Mutschler, Miller, and/or John Doe. *Id.* ¶¶ 11-13.

Plaintiff states he filed grievances about the opening of his legal mail to McKishen on July 23, 2012, October, 18, 2012,

and other dates, but McKishen did not remedy the situation. *Id.* ¶ 14.

## B. Defendants' Statement of Material Facts

Defendants state that Plaintiff is serving a forty-four-year sentence with a mandatory minimum of twenty-two years. Defendants' Statement of Facts ("DSOF"), Docket Entry 124-2 ¶ 2. Defendants state Plaintiff testified during his deposition he had "'no proof' as to who opened and/or tampered with the legal mail that was delivered to him on June 23, 2012, and that he was ultimately informed that the letter had been opened because he was the addressee and it was not considered legal mail." DSOF ¶ 8; *see also* Deposition Transcript, Defendants' Exhibit C, 12:14-16, 44:5-11. Plaintiff also testified no documents were missing from the envelope on June 23, 2012. DSOF ¶ 9; Transcript 11:9-13. Defendants further state that Plaintiff testified nothing appeared to be missing from the legal mail that was delivered to him on June 26, 2012. DSOF ¶ 12; Transcript 14:21-23.

According to Defendants, the envelope that had been returned to Plaintiff on August 29, 2012 had originally been mailed to Dr. Rubin Carter in Toronto, Canada on August 3, 2012. DSOF ¶¶ 13, 15; Certification of Kevin J. Dronson ("Dronson Cert.") Exhibit K.  The envelope was marked "Return to Sender." DSOF ¶ 14; Dronson Cert. Exhibit K. Defendants argue Plaintiff conceded that the mail was returned to him with the contents

intact. DSOF ¶ 16; Transcript 17:3-5. Plaintiff also conceded
that no documents were removed from the mail he received on
September 5, 2012 or September 26, 2012. DSOF ¶¶ 17-18, 21;
Transcript 20:13-16, 24:24 to 25:23.

Defendants assert Plaintiff cannot show they were the ones
who opened or tampered with his legal mail. Mutschler states he
was not assigned to work in the SWSP mailroom on any of the
dates on which Plaintiff alleges his mail was tampered with.
DSOF ¶ 24; Mutschler Response to Plaintiff's Second Request for
Admissions ("Mutschler Admissions"), Docket Entry 124-9 ¶¶ 1-8.
Mutschler's sole responsibility was to deliver mail on June 26,
2012. DSOF ¶ 24; Mutschler Admissions ¶ 67. Ortiz argues her
duties were limited to processing bulk mail, not legal mail, on
the dates in question. DSOF ¶¶ 25-26; Ortiz Response to
Plaintiff's Second Request for Admissions, Docket Entry 124-10
("Ortiz Admissions") ¶¶ 9-16.[2] Parks denies being assigned to the
mailroom on the relevant dates and states he only delivered mail
to Plaintiff on June 23, 2012. DSOF ¶ 29; Parks Response to
Plaintiff's Second Request for Admissions ("Parks Admissions"),
Docket Entry 129-11 ¶ 66. Pettit delivered mail to Plaintiff on

---

[2] Ortiz's answer to admissions are listed as Exhibit E to the
Certification of Kevin J. Dronson. Dronson Cert ¶ 7. However,
her answers are docketed as Exhibit F; there is no Exhibit E on
the docket. *See* Docket Entry 124. Davis' answers to admissions
were not submitted with defendants' motion.

June 23, 2012. DSOF ¶ 30; Pettit Response to Second Request for Admissions ("Pettit Admissions"), Docket Entry 129-12 ¶ 85. Defendant Robbins asserts he only worked in the mailroom on August 3, 2012. DSOF ¶ 31; Robbins Response to Plaintiff's Second Request for Admissions (Robbins Admissions), Docket Entry 129-13 ¶ 4.

Defendants argue Plaintiff conceded that other legal mail was properly delivered and opened in his presence between May 2012 and January 2013. DSOF ¶ 32; Transcript 28:16-18. They assert that all legal mail besides the few instances named in Plaintiff's second amended complaint were opened in Plaintiff's presence. DSOF ¶¶ 34-46. "Indeed, Plaintiff testified that he was not aware of any legal mail not identified in this action being opened outside of his presence during the relevant time period." DSOF ¶ 47.

Furthermore, Defendants state Plaintiff alleged more compensatory damages than there were actual damages. DSOF ¶ 49. Although Plaintiff alleged Defendants tampered with his mail out of retaliation for a different civil suit, Defendants argue Plaintiff conceded he had no proof of a retaliatory motive and only one letter related to that other civil proceeding. DSOF ¶¶ 50-51; Transcript 47:3-11, 49:7-17. The other letters concerned criminal proceedings, but Plaintiff could not "state whether Defendants' alleged tampering with his legal mail affected any

of the aforementioned actions." DSOF ¶ 53; Transcript 48:24, 49:24.

## C. Plaintiff's Statement of Material Facts

Plaintiff agrees that he was incarcerated in SWSP at the relevant period. Plaintiff's Statement of Facts ("PSOF"), Docket Entry 129 ¶ 3. He states that Reyes, Ortiz, Davis, Pettit, Thompson, Seguinot, Robbins, Goffredi, Wolbert, Donaghy, Rivera, Parks, and Mutschler tampered with his legal mail by opening it outside of his presence. *Id.* ¶ 5. McKishen purportedly failed to remedy the ongoing constitutional violation when Plaintiff filed grievances. *Id.*

Plaintiff states Parks admitted to delivering mail to Plaintiff on June 23, 2012. *Id.* ¶ 6; Parks Admissions ¶ 82. He alleges this piece of mail had been tampered with outside of his presence. PSOF ¶ 7. He states Davis also admitted she worked in the mailroom on June 23, 2012, and that part of her duties were to "separate inmate regular mail from legal mail; and that she opened and inspected inmate mail on said date." *Id.* ¶ 8; Davis Response to First Request for Admissions (Davis Admissions), Docket Entry 129 at 11 ¶¶ 2, 4, 6-9.[3] He agreed that no documents appeared to be missing from his June 23, 2012 legal mail but

---

[3] The exhibit for Davis' Request for Admissions appears to be from multiple sources as the paragraph numbering is not consistent between pages. *See* Docket Entry 129 at 11-14.

asserts the mail had been tampered with as the staple had been removed and the envelope had been taped. PSOF ¶ 9.

Plaintiff states that Mutschler admitted that he delivered mail on June 26, 2012, as part of his housing-unit officer responsibilities. *Id.* ¶ 10. He then goes on to state Mutschler denied delivering mail to Plaintiff. *Id.* Plaintiff further states Robbins also admitted to serving as a housing-unit officer on June 26, 2012 but denied delivering mail. *Id.* Thompson admitted to working in the mailroom on June 26, 2012 but asserted he could not "recall whom may have opened and/or inspected inmate regular and/or legal mail" on that date. *Id.*; Thompson Answer to Second Set of Interrogatories ("Thompson Interrogatories"), Docket Entry 129 at 26 ¶ 3.[4] Plaintiff testified at his deposition that nothing appeared to be missing from this mail piece. PSOF ¶ 12.

On August 29, 2012, Pettit returned a legal mail piece addressed to Dr. Rubin Carter for the Innocence Project in Toronto, Canada that Plaintiff mailed out on August 3, 2012. *Id.* ¶¶ 13, 15. Plaintiff indicates Pettit admitted to delivering Plaintiff's mail on August 29, 2012 and to being Plaintiff's housing-unit officer on August 3, 2012. *Id.* at 13. Robbins and

---

[4] Plaintiff has not provided the complete answers to interrogatories or a certification that his exhibits are true and accurate copies of the originals.

Davis admitted to working in the mailroom on August 3, 2012. *Id.* Robbins stated he could not remember who opened or inspected legal mail on that date, and Davis admitted she opened legal mail on August 29, 2012. *Id.;* Davis Admissions ¶ 5. Plaintiff alleges the letter was tampered with by "scratching out part of the address on the envelope." PSOF ¶ 14; Dronson Cert. Exhibit K. He testified at his deposition that the contents of his letter were intact. PSOF ¶ 16.

Plaintiff alleges Pettit or John Doe delivered legal mail on September 5, 2012. *Id.* ¶ 17. Miller indicated he was working as the housing-unit officer on 6-1-Right on that date, but he did not remember who delivered mail. *Id.;* Miller Answers to Second Set of Interrogatories ("Miller Interrogatories"), Docket Entry 129 at 34, ¶¶ 3-4. Plaintiff stated during his deposition that no documents were missing from his September 5, 2012 mail. *Id.* ¶ 18.

Plaintiff states Pettit delivered legal mail from Centurion Ministries on September 26, 2012 that had been opened outside of Plaintiff's presence. *Id.* ¶¶ 19-20. Robbins and Pettit admitted they were housing-unit officers. *Id.* at 19; Pettit Admissions ¶ 79; Robbins Admissions ¶ 79. Pettit admitted to delivering the mail on that date. Pettit Admissions ¶ 85. Davis and Wolbert admitted to working in the mailroom on September 26, 2012. Davis Admissions ¶ 7. Defendant Wolbert indicated he could "not recall

who may have opened and/or inspected inmate regular and/or legal
mail on" September 26, 2012. Wolbert Response to Second Set of
Interrogatories ("Wolbert Interrogatories"), Docket Entry 129 at
37 ¶ 3. Nothing was missing from the envelope, but it had been
opened and resealed. PSOF ¶ 21.

Plaintiff states Pettit delivered opened legal mail on
January 26, 2013. *Id.* ¶ 22. Pettit admitted to working as the
housing-unit officer and delivering mail on that date. *Id.;*
Pettit Admissions ¶¶ 72, 80. Donaghy could not recall his
assigned duties from January 26, 2013. PSOF ¶ 22.

**III. STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, "[s]ummary
judgment is appropriate only if 'the movant shows that there is
no genuine issue as to any material fact and the movant is
entitled to judgment as a matter of law.' In making that
determination, a court must view the evidence 'in the light most
favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct.
1861, 1866 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v.
S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute
of "material" fact exists where a reasonable jury's review of
the evidence could result in "a verdict for the non-moving
party" or where such fact might otherwise affect the disposition
of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 248 (1986). "To defeat a motion for summary judgment, the

nonmoving party must show that there is more than merely 'a scintilla of evidence' supporting his position, or 'some metaphysical doubt as to the material facts." *Transamerica Occidental Life Ins. Co. v. Total Sys. Inc.*, 513 F. App'x 246, 249 (3d Cir. 2013) (quoting *Anderson*, 477 U.S. at 252; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**IV. ANALYSIS**

Defendant argue they are entitled to summary judgment as Plaintiff has failed to prove that they were personally involved in the opening of Plaintiff's legal mail. They also argue they are entitled to judgment on his interference with legal mail and access to the court claims. Alternatively, they argue they are entitled to qualified immunity.

**A. Personal Involvement**

Defendants argue Plaintiff has not provided evidence that they were the ones who opened and/or inspected his legal mail and that it is implausible that they all engaged in a pattern or practice of opening Plaintiff's legal mail. The record before the Court, as explained below, indicates no jury could find in favor of Plaintiff as to liability for defendants Ortiz, Pettit, Parks, Mutschler, and Miller.[5]

---

[5] Although this section mainly refers to Plaintiff's claim of interference with his legal mail, the Court's analysis equally

According to the uncontradicted record, Ortiz never handled or inspected legal mail. She was assigned to the mailroom on May 12, 2012, June 26, 2012, August 29, 2012, September 5, 2012, and September 26, 2012. Ortiz Admissions ¶¶ 9, 11, 13, 14, 15. Her duties on those dates included "process[ing] bulk packages/mail that was from a source of sale," meaning when the "return address indicated that it was a package that an inmate had ordered from a business. The bulk mail packages that [Ortiz] processed consisted of books, magazines, art supplies, hobby materials, and jewelry. [She] did not deal with regular 1st class mail – legal or otherwise." Ortiz Answers to Plaintiff's Second Set of Interrogatories ("Ortiz Interrogatories"), Docket Entry 129 at 57 ¶ 4. Ortiz was not on mailroom duty on June 23, 2012, August 3, 2012, and January 26, 2013. Ortiz Admissions ¶¶ 2, 12; Ortiz Interrogatories ¶ 1. She delivered mail on June 26, 2012. Ortiz Admissions ¶ 66.

Ortiz has provided sworn statements that her mailroom duties were limited to inspecting bulk mail packages, defined as large mail from businesses, not first-class mail. Plaintiff has not provided any admissible evidence to contradict Ortiz's answers to his Request for Admissions and Interrogatories, and

_____

applies to his access to the courts claim because that claim is premised on the tampering with Plaintiff's legal mail by opening it outside of his presence.

he admitted to these statement of facts as presented by defendants. *See* Plaintiff's Responsive Statement of Material Facts ("PRSOF"), Docket Entry 132 ¶¶ 25-26. Therefore, Ortiz is entitled to judgment as a matter of law.

Similarly, no reasonable jury could find Parks liable for interfering with Plaintiff's legal mail. Parks delivered mail to Plaintiff on June 23, 2012. Parks Admissions ¶¶ 66, 82. His mail delivery duties on June 26, 2012 and January 26, 2013 did not include delivering mail to Plaintiff. *Id.* ¶¶ 67, 72, 75, 83, 88.[6] He was not assigned to the mailroom on the dates in question. *Id.* ¶¶ 1-8. Again, Plaintiff has not provided any admissible evidence to contradict these facts. Parks is entitled to judgment as a matter of law as his only interaction with Plaintiff's mail was delivering it on June 23, 2012. A reasonable jury would not find him liable for opening Plaintiff's legal mail based on that lone interaction.

Mutschler and Pettit are also entitled to judgment as a matter of law as they also did not work in the mailroom on the dates in question. Pettit Admissions ¶¶ 1-8; Mutschler Admissions ¶¶ 1-8. These defendants only delivered mail. Pettit was responsible for delivering mail on August 29, 2012,

---

[6] Pettit indicated he believed Parks may have delivered mail on September 5, 2012, Pettit Interrogatories ¶ 3, but Parks denies delivering mail on this date, Parks Admissions ¶ 70.

September 26, 2012, and January 26, 2013. Pettit Admissions ¶ 69, 71-72. He admits to delivering mail to Plaintiff on those dates. *Id.* ¶¶ 85, 87-88. Mutschler admitted part of his housing-unit officer responsibilities on June 26, 2012 was to deliver mail, Mutchler Admissions ¶ 67, 75, but denied delivering mail to Plaintiff on that date, *id.* ¶ 83.[7] Plaintiff has presented no evidence that these defendants were in the mailroom on the relevant dates. Plaintiff does not allege they opened his mail while delivering it, just that they delivered mail that had been opened by someone else. *See, e.g.,* SAC ¶¶ 7-8. There is no evidence in the record before the Court to support an inference they tampered with Plaintiff's legal mail. They are therefore entitled to judgment as a matter of law.

Finally, no reasonable jury could find liability as to Miller on the record before the Court. According to his answers to Plaintiff's Second Set of Interrogatories, Miller was only assigned as Plaintiff's housing-unit officer on September 5, 2012. Miller Interrogatories ¶ 3. He "did not work in either 6-1-Right or the mailroom on any other relevant date, nor is he aware of who may have delivered mail on those other dates." *Id.* ¶ 4. He denied opening Plaintiff's mail on September 5, 2012.

---

[7] Pettit indicated he believed Mutschler may have delivered mail on September 5, 2012, Pettit Interrogatories ¶ 3, but Mutschler denies delivering mail on this date, Mutschler Admissions ¶ 70.

*Id.* He "was not assigned to the mail room . . . on the dates listed by Plaintiff." *Id.* ¶ 3. There is no contradicting evidence before the Court.[8]

The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff bears the burden of proof at trial, and he has not presented any evidence that defendants Ortiz, Pettit, Parks, Mutschler, and Miller were involved in the opening of or tampering with his legal mail. He cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir. 1995). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990).

---

[8] Miller's responses to Plaintiff's Second Request for Admissions were deemed admitted. PRSOF ¶ 27. Neither party presented the admissions to the Court in their summary judgment papers or in their motion withdraw the deemed admissions. *See* Order of Magistrate Judge Donio, Docket Entry 130. Therefore, the summary judgment record does not reflect what Miller is deemed to have admitted.

The other defendants, excluding McKishen who is alleged to be liable on a supervisory basis, all admitted to having worked in the mailroom on at least one of the relevant dates. They either acknowledged being responsible for separating regular mail from legal mail or claimed they could not recall their assignment. *See, e.g.,* Thompson Interrogatories ¶ 1 (admitting to working in mailroom on June 26, 2012); Robbins Admissions ¶¶ 3, 60 (admitting to working in mailroom in position 3 on August 3, 2012); Wolbert Interrogatories ¶ 1 (admitting to working in mailroom on September 26, 2012); Donaghy Answers to Plaintiff's Interrogatories ("Donaghy Interrogatories"), Docket Entry 129 at 41 ¶ 1 (admitting to working in mailroom on January 26, 2013); Davis Admissions ¶¶ 2, 5 (admitting to working in the mailroom on June 23, 2012 and August 29, 2012); Seguinot's Responses to Plaintiff's Request for Admissions ("Seguinot Admissions"), Docket Entry 129 at 49 ¶¶ 6-8 (admitting to working in the mailroom and separating regular inmate mail from legal inmate mail and opening inmate mail between May 12, 2012 and January 26, 2013); and Goffredi's Responses to Plaintiff's Request for Admissions ("Goffredi Admissions"), Docket Entry 129 at 53 ¶¶ 6-8 (admitting to working in the mailroom and separating regular inmate mail from legal inmate mail and opening inmate mail between May 12, 2012 and January 26, 2013).

Accordingly, the Court will grant summary judgment on behalf of defendants Ortiz, Pettit, Parks, Nutschler, and Miller, and all claims against them will be dismissed for lack of evidence or any involvement. There is a question of fact as to whether these defendants were involved in the opening of Plaintiff's legal mail. Summary judgment against the remaining defendants, on the basis that there is no evidence of their personal involvement, will be denied.

## B. Constitutional Protections from Interference with Legal Mail

Defendants also argue Plaintiff has failed to prove constitutional violations for interfering with his legal mail and with his access to the courts. The Constitution permits prisons to restrict prisoners' right to send and receive mail for legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). However, "prisoners, by virtue of their incarceration, 'do not forfeit their First Amendment right to use of the mails,' and . . . a 'pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech.'" *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995)) (alteration in original). Prisoners' legal mail is accorded heightened protection because "opening properly marked court mail . . . chills protected expression and may inhibit the

inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." *Id.* at 358-59 (internal quotation marks omitted). Prisoners also have a First Amendment right to access the courts. *See Bounds v. Smith*, 430 U.S. 817 (1977). "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury. Actual injury occurs when a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts." *Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (citing *Lewis v. Casey*, 518 U.S. 343, 352–53 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

    *1. Letters not Qualifying as "Properly Marked Legal Mail"*

    Defendants assert Plaintiff has failed to prove there was a policy or practice of opening legal mail outside of Plaintiff's presence because not all the mail presently at issue qualifies as "legal mail." Specifically, Defendants argue the letters that were returned to Plaintiff on June 23, 2012 and August 29, 2012 and the letter that was delivered as regular mail on September 26, 2012 are not "legal correspondence" within the meaning of the New Jersey Administrative Code.[9]

---

[9] Defendants concede the June 26, 2012 letter, addressed to Plaintiff from the ACLU; the September 5, 2012 letter, addressed to Plaintiff from the Seton Hall University Last Resort Exoneration Project; and the January 23, 2013 letter, addressed

The New Jersey Administrative Code defines "legal correspondence" as mail between a prisoner and a "legal correspondent." N.J. Admin. Code § 10A:1-2.2 A "legal correspondent" is defined as:

1.  An attorney of this State or any other state when properly identified as such on the outside of the envelope;

2.  Offices of the Federal or State Public Defender;

3.  The Office of the Attorney General;

4.  Federal, State, county and municipal courts;

5.  Federal, State, county and municipal court judges;

6.  Offices of Legal Services;

7.  Legal assistance clinics managed by accredited law schools of this or any other state;

8.  The Administrative Office of the Courts;

9.  Offices of the Federal, State or county Prosecutor;

10. A foreign consul;

11. The Bureau of Risk Management, New Jersey Department of the Treasury;

12. The Special Investigations Division, Department of Corrections;

13. The Corrections Ombudsperson; and

14. The Office of Administrative Law.

---

to Plaintiff from the Seton Hall University Last Resort Exoneration Project, were properly marked legal mail. Defendants' Brief at 17; Deposition Exhibits 3, 5, 7.

N.J. ADMIN. CODE § 10A:1-2.2.[10]

Defendants argue the mail that was returned to Plaintiff on June 23, 2012 does not constitute legal mail because Plaintiff, a non-legal correspondent, was the "sender." The letter at issue was originally outgoing legal mail addressed to Jean Ross, Esquire. Transcript 8:6-8; Deposition Exhibit 1, Docket Entry 124-8 at 22. The envelope is clearly addressed to an attorney and marked as containing legal mail. *See* N.J. ADMIN. CODE § 10A:18-3.2(a)-(b). It was returned to Plaintiff as the forwarding order on Attorney Ross' address expired. Deposition Exhibit 1.

A piece of legal correspondence, especially a letter to an attorney, does not become regular correspondence merely because the letter returned to the prisoner instead of reaching its intended destination. *See, e.g., Meador v. Pleasant Valley State Prison*, 312 F. App'x 954, 955 (9th Cir. 2009) ("Prison officials concede that they erroneously opened one piece of Meador's returned mail to a court outside of his presence."); *O'Donnell v. Thomas*, 814 F.2d 524, 527 (8th Cir. 1987) (remanding to

---

[10] The Court uses this administrative regulation as a working definition for "legal mail," recognizing that the list may be broader than the constitutional protections which concern themselves principally with attorney-client communications and access to courts. The precise definition need not be decided here; the correspondence not qualifying for protection under this listing also do not qualify for constitutional protection.

district court for determination of "whether, and, if so, why, jail officials opened three letters that were addressed to a federal magistrate and were returned to [plaintiff] at the jail inside a large manila envelope"). Plaintiff's letter to Attorney Ross was legal mail and should not have been opened outside of Plaintiff's presence. Prison officials should have followed the procedures outlined in New Jersey Administrative Code § 10A:18-3.4(e) if they suspected the mail was not legitimate legal mail.

The August 29, 2012 letter had been addressed to Dr. Rubin Carter in Toronto, Canada. DSOF ¶ 15; Dronson Cert. Exhibit K. It was returned to Plaintiff as undeliverable after being mailed out on August 3, 2012. Plaintiff's letter to Dr. Carter is marked as containing "Legal Pleadings." Dronson Exhibit K. The portion of the address directly under Dr. Carter's name is scratched out and has a new address hand-written to the right. *Id.* Plaintiff testified that Dr. Carter was affiliated with the Innocence Project, Transcript 16:10-12, but nothing visible on the envelope indicates this affiliation. Plaintiff alleges defendants tampered with the envelope by "scratching out part of the address on the envelope," but he does not state what was originally written on that line. PSOF ¶ 15. Giving Plaintiff the benefit of all reasonable inferences on summary judgment as the non-movant, the line contained a reference to Dr. Carter's

affiliation with the Innocence Project. The Court considers this letter legal mail for purposes of this motion.

The September 26, 2012 letter was from Centurion Ministries.[11] DSOF ¶ 20; Dronson Cert. Exhibit L. Plaintiff admits both facts. PRSOF ¶¶ 15, 20. Plaintiff's letter from Centurion Ministries has "Seeking Justice for the Innocent in Prison" written at the bottom of the envelope in very small typeface. Dronson Exhibit L. Aside from that small notation, there is nothing to indicate the contents may contain confidential, legal materials. A prison ministry group is not included in § 10A:1-2.2's definition of legal correspondents. Therefore, this letter does not qualify as properly marked legal mail. *See Fontroy v. Beard*, 559 F.3d 173, 174 n.1 (3d Cir. 2009) (defining "'legal mail' to refer to incoming attorney and court mail"); *Wenk v. Cross*, No. 12-1908, 2013 WL 1750021, at *5 (D.N.J. Apr. 23, 2013) ("[] Plaintiff's challenges associated with his mailing to his friends, relatives and self-styled religious organizations (such as Greenman Ministry) cannot form a basis for a claim asserting interferences with Plaintiff's legal mail.").

---

[11] Defendants state Exhibit L is "Plaintiff's envelope addressed to Centurion Ministries . . . ." Dronson Cert. ¶ 14. Exhibit L is a letter addressed to Plaintiff from Centurion Ministries, not a letter from Plaintiff to Centurion Ministries.

Plaintiff's mail from Centurion Ministries does not qualify as "legal correspondence" as defined by the New Jersey Administrative Code. September 26, 2012, the day this letter was returned to Plaintiff, was the only day Wolbert worked in the mailroom. Wolbert Interrogatories ¶ 1. As this letter does not meet the definition of legal mail, no reasonable jury could find in favor of Plaintiff against Wolbert.

2. *No Policy or Practice*

Defendants next argue Plaintiff has failed to allege a policy or practice of opening his legal mail outside his presence. They state the times Plaintiff's legal mail was opened were isolated incidents causing no legal injury to Plaintiff.

"A state pattern and practice, or . . . explicit policy, of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). Prisoners need not establish an actual injury when such a pattern and practice of opening properly marked incoming legal mail outside an inmate's presence exists. *Id. See also Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (per curiam).

Excluding the letter from Centurion Ministries, the remaining mailroom defendants[12] are alleged to have opened five legal letters outside of Plaintiff's presence between May 12, 2012 and January 26, 2013: an envelope addressed to Attorney Ross and returned to Plaintiff due to an insufficient address; a letter addressed to Plaintiff from the ACLU; a letter addressed to Dr. Carter and the Innocence Project and returned to Plaintiff due to an insufficient address; and two letters addressed to Plaintiff from the Seton Hall University Last Resort Exoneration Project. Plaintiff testified during his deposition that he received other items of legal correspondence between May 12, 2012 and January 26, 2013. Transcript 28:16-18. He estimated he received between five and ten legal mailings a month, *id.* at 30:2-7, and he knew of no other instances in which his legal mail was opened outside of his presence during the relevant period. *id.* at 28:16-25. In his answer to Defendants' request for admissions, Plaintiff identified at least sixteen pieces of legal mail that were opened in his presence between June 13, 2012 and January 18, 2013. Plaintiff's Response to Defendants' First Request for Admissions ("Plaintiff's

---

[12] McKishen is not included in the so-called "mailroom defendants" as Plaintiff's claims against him are based on McKishen's alleged failure to remedy the situation once it was brought to his attention.

Admissions") ¶¶ 4-5, 7, 9-11, 13-14, 16-17, 19-20, 23-24, 26-27, 29-30, 32-33, 35-36, 38-39, 42-43.

Generally, isolated incidents of interference with legal mail are not actionable under the First Amendment absent evidence of an improper motive or evidence of injury. *See, e.g.*, *Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."). A reasonable jury could conclude that the five instances in which Plaintiff's legal mail was opened outside of his presence were not isolated incidents. Between the five letters that were opened outside of Plaintiff's presence and the sixteen letters that were opened in Plaintiff's presence, the parties have identified twenty-one pieces of legal mail that were either sent by or addressed to Plaintiff between May 12, 2012 and January 25, 2013. That equals nearly 24 percent of the identified legal mail that was opened outside of Plaintiff's presence,[13] meaning just under a quarter of Plaintiff's legal mail was being opened outside of his presence. *See Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ("Two or three pieces of mail opened in an arbitrary or capricious way suffice

---

[13] (5 / 21) x 100 = 23.8.

to state a claim."). Because a jury could conclude a pattern or practice existed, Plaintiff is not required to show any injury or an improper motive. *Schreane*, 482 F. App'x at 676 ("Prisoners may establish a violation of the First Amendment without establishing actual injury where there is a pattern and practice of opening properly marked incoming legal mail outside the prisoner's presence."). Plaintiff will have the burden at trial of proving that these items of mail were clearly designated as "legal mail," that they were opened by defendants outside his presence, and that these openings constituted a pattern or practice rather than isolated incidents.

Plaintiff's claims against McKishen are based on McKishen's position as the mailroom sergeant. "Under § 1983, 'a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'" *Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 & n.5 (3d Cir. 2010) (omission in original)). *See also A.M. ex rel. J.M.K. v. Luzerne Cnty.*, 372 F.3d 572, 586 (3d Cir. 2004). Plaintiff has submitted evidence indicating he filed grievances with McKishen regarding the opening of his legal mail. *See* Inmate Remedy System Form, Docket Entry 129 at 15; Plaintiff's Admissions ¶¶

44-48. McKishen admitted he "received and investigated Plaintiff's grievance regarding his claims of legal mail being opened outside of his presence." McKishen's Response to Interrogatories ("McKishen Interrogatories"), Docket Entry 129 at 45, ¶ 96. McKishen admits it would have been his responsibility to "remedy any improper opening of legal mail by [Department of Corrections] staff." *Id.* ¶ 100. Therefore, there is enough to proceed to a jury on McKishen's liability as a supervisor. *See Diaz*, 442 F. App'x at 215 (reversing grant of summary judgment to supervisors as a reasonable factfinder could find they had knowledge of and acquiesced in a practice of opening legal mail outside of an inmate's presence based on receipt and response to grievances).

Summary judgment is denied as to Seguinot, Goffredi, and Davis for their alleged interference with Plaintiff's letter to Attorney Ross on June 23, 2012; Seguinot, Goffredi, and Thompson for their alleged interference with Plaintiff's letter from the ACLU on June 23, 2012; Seguinot, Goffredi, Thompson, and Robbins for their alleged interference with Plaintiff's letter to Dr. Carter on August 3, 2012; Seguinot, Goffredi, and Davis for their alleged interference with Plaintiff's returned letter to Dr. Carter on August 29, 2012; Seguinot and Goffredi for their alleged interference with Plaintiff's letter from Seton Hall on September 5, 2012; and Seguinot, Goffredi, and Donaghy for their

alleged interference with Plaintiff's letter from Seton Hall on January 26, 2013. Summary judgment is denied as to McKishen for his alleged failure to correct an ongoing constitutional violation. Summary judgment is granted as to Ortiz, Pettit, Parks, Mutschler, Miller, and Wolbert.

    *3. Access to the Courts*

    Defendants also move for summary judgment on Plaintiff's access to the courts claim, arguing he has not proven an injury to a cause of action.

    To prove his access to the courts claim, Plaintiff must submit evidence indicating "he has suffered an actual injury to his ability to present a claim. A prisoner can show an actual injury only when a nonfrivolous, arguable claim is lost." *Henry v. Moore*, 500 F. App'x 115, 117 (3d Cir. 2012) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 352–54 (1996)). Additionally, "the claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement [and] a prisoner must demonstrate that no other remedy will potentially compensate for the lost claim." *Id.* (internal citations omitted); *see also Lewis*, 518 U.S. at 355 ("Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

Plaintiff testified during his deposition that the legal
mail at issue concerned criminal matters and a different lawsuit
that had been filed in the District of New Jersey Newark
Vicinage for excessive force. Transcript 47:17 to 48:3; 49:18-
20. He testified the opening or other alleged tampering with his
legal mail "could have" impacted the other civil lawsuit, which
was dismissed in 2013 or 2014. *Id.* at 48:24-25, 8. He admitted
he did not know whether his criminal matter had been impacted.
*Id.* at 49:21-24. Plaintiff has not presented any evidence beyond
his own unsupported speculation that either his civil lawsuit or
his criminal proceedings were impacted by the alleged tampering
with his legal mail. Defendants are therefore entitled to
summary judgment on the access to the courts claim.

## C. Qualified Immunity

Defendants next argue they are entitled to summary judgment
under the doctrine of qualified immunity.

"Qualified immunity shields government officials from civil
damages liability unless the official violated a statutory or
constitutional right that was clearly established at the time of
the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044
(2015) (internal citation and quotation marks omitted). The
first prong of the analysis "asks whether the facts, [t]aken in
the light most favorable to the party asserting the injury, . .
. show the officer's conduct violated a [federal] right[.]"

*Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (internal
quotation marks and citations omitted) (alterations and
omissions in original). As set forth above, there is sufficient
evidence at the summary judgment stage that defendants violated
Plaintiff's First Amendment right to be present while his legal
mail was being inspected.

"The second prong of the qualified-immunity analysis asks
whether the right in question was 'clearly established' at the
time of the violation." *Id.* at 1866 (internal citation and
quotation marks omitted). The Supreme Court has held that a
right is clearly established when the right is "sufficiently
clear that every reasonable official would have understood that
what he is doing violates that right." *Taylor*, 135 S. Ct. at
2044 (internal citation and quotation marks omitted). There does
not need to be "a case directly on point, but existing precedent
must have placed the statutory or constitutional question beyond
debate." *Id.; see also Mammaro v. N.J. Div. of Child Prot. &
Permanency*, 814 F.3d 164, 169 (3d Cir. 2016), *as amended* (Mar.
21, 2016) (citing *Taylor* for proposition that "a 'robust
consensus of cases of persuasive authority' in the Court of
Appeals could clearly establish a right for purposes of
qualified immunity").

Defendants are not entitled to qualified immunity. *Jones*
clearly and unambiguously states that a pattern or practice of

opening legal mail outside of a prisoner's presences violates the First Amendment. *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). This is in accord with several other courts of appeals. *See Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ("Prison officials would also be on notice as of 2003 that opening properly marked legal mail alone, without doing more, implicates both the First and Sixth Amendments because of the potential for a 'chilling effect.'"); *Al-Amin v. Smith*, 511 F.3d 1317, 1333–34 (11th Cir. 2008) (citing *Jones*); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A] prisoner has a right to be present when his legal mail is opened . . . ."); *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981)("Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner."). *See also Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017) ("Prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence.").

A reasonable prison official would have been aware beginning in May 2012 that routinely opening a prisoner's legal mail outside of his presence was unconstitutional. Defendants are not entitled to qualified immunity.

## D. Damages

Defendants next assert that Plaintiff is not entitled to compensatory or punitive damages.

Under § 1983, a defendant whose conduct demonstrates a reckless or callous indifference toward others' rights may be liable for punitive damages. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (stating that a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989) (holding that a defendant's conduct must be at minimum reckless or callous to impose punitive damages under § 1983). The Third Circuit "has explained that the term 'reckless indifference' refers to the defendant's knowledge that he 'may be acting in violation of federal law.'" *Whittaker v. Fayette Cty.*, 65 F. App'x 387, 393 (3d Cir. 2003) (quoting *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000)). A reasonable jury could decide on the record before the Court that defendants were aware they were violating Plaintiff's federally protected rights. This is therefore a question for the jury. *See Coleman v. Rahija*, 114 F.3d 778, 787 (3d Cir. 1997).

"It is well settled that compensatory damages under § 1983 are governed by general tort-law compensation theory. In other words, 'damages are available under [§ 1983] for actions found .

. . to have been violative of . . . constitutional rights and to have caused compensable injury . . . .'" *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) (quoting *Carey v. Piphus*, 435 U.S. 247, 255 (1978) (alteration and omissions in original)). The Supreme Court has held "that substantial damages may only be awarded to compensate for actual injury suffered as a result of the violation of a constitutional right." *Id.* (citing *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986)); *see also Carey*, 435 U.S. at 248 (compensatory damages may not be awarded absent proof of actual injury).[14]

Moreover, § 1997e bars compensatory damages for mental and emotional injuries in § 1983 cases brought by prisoners "without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). Neither of these exceptions apply to Plaintiff's second amended complaint. In *Allah*, the Third Circuit dismissed compensatory damages claims for a plaintiff alleging violations of his First Amendment free exercise right. "As we read his complaint, the only actual injury that could form the basis for the award he seeks would be mental and/or emotional injury."

---

[14] Plaintiff is still entitled to nominal damages. "To be clear, nominal damages are a trivial amount of monetary recovery that often does not exceed $1." *Webster v. Rutgers-New Jersey Med. Sch.*, No. 15-08689, 2017 WL 3399997, at *9 (D.N.J. Aug. 4, 2017).

*Allah*, 226 F.3d at 250. Likewise, Plaintiff has not alleged a physical injury, and his claims for compensatory damages are dismissed.

## E. Other Relief

Finally, Defendants assert Plaintiff's request for injunctive and declaratory relief must be dismissed as he is no longer confined in SWSP.

"The purpose of a declaratory judgment is to 'declare the rights of litigants.' The remedy is thus by definition prospective in nature." *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Plaintiff "cannot obtain declaratory relief for past alleged wrongs." *Capozzi v. Bledsoe*, 560 F. App'x 157, 159 (3d Cir. 2014). Plaintiff's second amended complaint does not request any particular form of injunctive relief, just relief as the Court deems appropriate. SAC ¶ 19. As Plaintiff is no longer confined in SWSP and has not alleged ongoing problems with his mail, the Court will dismiss the injunctive relief claims.

## V. CONCLUSION

For the reasons stated above, summary judgment is granted as to defendants Ortiz, Pettit, Parks, Mutschler, Miller and Wolbert on the legal mail claim and to all defendants on the access to the courts claim. Plaintiff's claims for compensatory

damages, injunctive, and declaratory relief are dismissed. The sole claims that remain for trial are Plaintiff's claims that the following defendants interfered with the following pieces of legal mail:

| Date | Defendant(s) | Piece of Mail |
|---|---|---|
| June 23, 2012 | Seguinot, Goffredi, Davis | Jean Ross, Esq. Letter |
| June 26, 2012 | Seguinot, Goffredi, Thompson | Letter from ACLU |
| August 3, 2012 | Seguinot, Goffredi, Thompson, Robbins | Letter to Dr. Rubin Carter mailed |
| August 29, 2012 | Seguinot, Goffredi, Davis | Letter to Dr. Rubin Carter returned |
| September 5, 2012 | Seguinot, Goffredi | Letter from Seton Hall University clinic |
| January 26, 2013 | Seguinot, Goffredi, Donaghy | Letter from Seton Hall University clinic |

Plaintiff's claim that McKishen failed to correct the ongoing constitutional violation also survives for trial. An accompanying Order will be entered.

**June 29, 2018**                         **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          U.S. District Judge